# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BRYAN P. BONHAM,

    Plaintiff

v.

R. BAKER, et. al.,

    Defendants

Case No.: 3:18-cv-00242-MMD -WGC

**Report & Recommendation of United States Magistrate Judge**

Re: ECF Nos. 31, 40

    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

    Before the court is Plaintiff's Motion for Summary Judgment. (ECF Nos. 31, 31-1.) Defendants filed a response. (ECF Nos. 32, 32-1 to 32-7, 34-1, 38-1, 38-2.) Plaintiff did not file a reply. Also before the court is Defendants' Motion for Summary Judgment. (ECF No. 40.) Plaintiff filed a response. (ECF No. 64.) Defendants did not file a reply.

    After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part, and that Plaintiff's motion be denied.

## **I. BACKGROUND**

    Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 4.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*) Defendants are Renee Baker, David Carpenter, Jaime Gouveia, and Harold Wickham.

1  The court screened Plaintiff's complaint and allowed him to proceed with a Fourteenth Amendment procedural due process claim based on allegations that Gouveia issued a notice of charges against Plaintiff that he had received a tattoo in his housing unit, when that was false. At the disciplinary hearing, Plaintiff claims that Carpenter denied him his right to call a witness to testify that the tattoo was not new. Carpenter found Plaintiff guilty and assessed him with the sanction of restitution in the amount of $150. Plaintiff appealed the disciplinary finding, and alleges that Baker and Wickham failed to rectify the violations on appeal. (Screening Order, ECF No. 3.)

Plaintiff moves for summary judgment, arguing that Gouveia falsely stated in his notice of charges that Plaintiff said he had gotten the tattoo in the unit a few months prior; Carpenter violated his rights when he did not allow Plaintiff to present his witness without giving any explanation; and Baker and Wickham were aware of these issues and failed to intervene. Defendants oppose Plaintiff's motion and move for summary judgment based on the argument that Plaintiff was given all the process he was due. Alternatively, they contend they are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

1 defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate
2 an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving
3 party cannot establish an element essential to that party's case on which that party will have the
4 burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

5      If the moving party satisfies its initial burden, the burden shifts to the opposing party to
6 establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*
7 *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine
8 dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute
9 be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."
10 *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)
11 (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment
12 by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475
13 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the
14 pleadings and set forth specific facts by producing competent evidence that shows a genuine
15 dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

16 **III. DISCUSSION**

17 **A. Facts**

18      Plaintiff's booking summary report indicates that he was brought into the custody of
19 NDOC on October 27, 2015. (ECF No. 32-1.) That report lists the following "identifying marks":
20 a tattoo on the upper right arm consisting of a cross with the name "Tyler", as well as a tattoo of
21 "TAX" on his back. (*Id.*) It does not list a tattoo on the left forearm.

22      Defendant Gouveia wrote Plaintiff a notice of charges for tattooing or possession of a
23 tattoo device on November 5, 2017. His report states that he noticed that Plaintiff had some

peeling on his left forearm, and upon inspection Gouveia noticed what appeared to be "a somewhat fresh tattoo still in its healing stage." Gouveia asked Plaintiff how old the tattoo was, and reports that Plaintiff said, "Man this tattoo is old. I had it for a couple of months already." Gouveia then asked if he had received a notice of charges for the tattoo, and Plaintiff told him he had not. Gouveia also asked Plaintiff where he got the tattoo, and Plaintiff responded, "here in this unit." (ECF No. 32-2 at 2.) The notice of charges submitted by Defendants includes photographs of the tattoo. (ECF No. 32-2 at 3-6.) Plaintiff disputes that he told Gouveia he had the tattoo for a couple of months and that he got it in the unit.

That same date, Plaintiff was taken to medical, as is reflected in a "Medical Report of Incident, Injury or Unusual Occurrence" form. The form gives a place to fill in a brief description of the injury which states: "Fresh tattoo. IM states 'the co said it looks like a fresh tattoo.' States 'this one is not documented.'" The assessment portion of the form states: "Looked at and took picture." The plan states: "tattoo protocol." (ECF No. 34-1 at 2.)

Plaintiff saw Aaron Harroun for a preliminary hearing and entered a plea of not guilty. It was noted that Plaintiff wished to call Senior Correctional Officer Fonoimoana as a witness, as Plaintiff claimed she evaluated his tattoo and decided it was not fresh. The matter was referred for a disciplinary hearing. (ECF No. 32-3 at 2.)

David Carpenter was the disciplinary hearing officer. (ECF No. 32-4 at 2.) Under the heading "witness information" the disciplinary hearing form states: "The inmate called officer Fonoimoana as a witness. She was allowed and did tell me that her opinion was that the tattoo was not fresh." The form states that the witness was accepted as relevant. (ECF No. 32-4 at 2.) Plaintiff was found guilty, with Carpenter indicating that he relied on Gouveia's report as well as

the medical report to support the charge. (*Id*. at 2-3.) Plaintiff disputes that Fonoimoana was actually called as a witness.

Plaintiff filed a disciplinary appeal on December 11, 2017, arguing that he never told Gouveia that he got the tattoo in the last few months in his unit. (ECF No. 32-5 at 12-18.) He filed a first level grievance asserting that there had been knowingly false statements provided. He said that the Lieutenant (Carpenter) spoke with Fonoimoana, who confirmed that the tattoo did not look fresh. He asked for the write up to be dismissed and for Gouveia to be fired. (ECF No. 32-5 at 7-8.) Defendant Baker denied the first level appeal, finding that there was substantial compliance with the requirements of Administrative Regulation (AR) 707. She concluded that the disciplinary hearing officer's reliance on Gouveia's report, photographs, the medical report and the inmate's statement, constituted some evidence to support the hearing officer's decision, and the sanctions were appropriate. She also stated that due to Plaintiff's admission to the hearing officer during the hearing that the tattoo was completed in the unit, but not immediately new, the findings would stand, explaining that a new tattoo received while incarcerated is a new tattoo from the time of the inmate's intake into the system. (ECF No. 32-5 at 6.)

Plaintiff filed a second level appeal, asserting that he never told Gouveia that he got the tattoo in this unit, and he never told the disciplinary hearing officer that he got the tattoo while in prison; and therefore, Baker and was lying. (ECF No. 32-5 at 2.)

Wickham denied the second level appeal, finding the hearing officer's finding of guilt was based on some evidence, citing the officer's report, photos and medical report. Wickham stated that Plaintiff admitted in his statements that the tattoo was not new, but it was new within the system. (ECF No. 32-5 at 3.)

**B. Due Process**

The Fourteenth Amendment provides: "No state shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. Once the plaintiff has established that one of these interests is at stake, the court's analysis turns to whether the inmate suffered a denial of adequate procedural protections. *See Biggs v. Terhune*, 334 F.3d 910, 913 (9th Cir. 2003) (citations omitted).

Here, the parties agree that plaintiff has an implicated property interest because as a result of his disciplinary conviction he was sanctioned to pay restitution in the amount of $150.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted). When an inmate faces disciplinary charges, due process requires that the inmate receive: (1) written notice of charges at least 24 hours before the hearing so he may prepare his defense; (2) a written statement by the hearing officer of the evidence relied upon and reasons for taking disciplinary action; (3) the right to call witnesses in his defense, when doing so would not be unduly hazardous to the institutional safety or correctional goals; and (4) legal assistance if the prisoner is illiterate or the issues presented are legally complex. *Wolff*, 418 U.S. at 556.

In addition, "the requirements of due process are satisfied if some evidence supports the decision by the disciplinary board." *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985); *see also Wapole v. Hill*, 472 U.S. 445, 454-55 (1984) (citations omitted).

Plaintiff's complaint alleges his due process rights were violated because he was not permitted to call his and received no explanation for the refusal, and the disciplinary decision was not supported by some evidence.

**1. Witnesses**

The right to call witnesses in a prison disciplinary proceeding is a qualified right. Prison officials must make individualized determinations to limit the calling of witnesses. *See Ponte v. Real*, 471 U.S. 491, 497 (1985); *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003); *Mitchell v. Dupik*, 75 F.3d 517, 525 (9th Cir. 1996). Prisoners have no right to cross-examine witnesses in prison disciplinary hearings. *See Wolff*, 418 U.S. at 567-68.

"[T]he inmate's right to present witnesses is necessarily circumscribed by the penological need to provide swift discipline in individual cases." *Ponte*, 471 U.S. at 495. "The right is additionally circumscribed by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Id*. The right to call witnesses is "subject to the 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution….'" *Id*. (quoting *Baxter v. Palmigiano*, 425 U.S. 308 (1976)).

"'Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority[.]'" *Id*. (quoting *Wolff*, 418 U.S. at 566.) In addition, prison officials have discretion to refuse to call witnesses for other reasons such as "irrelevance [or] lack of necessity." *Wolff*, 418 U.S. at 566. The proffered reasons for not allowing a witness must be "logically related to preventing undue hazards to 'institutional safety or correctional goals[.]" *Ponte*, 471 U.S. at 487.

Prison officials should explain "in a limited manner, the reason why witnesses were not allowed to testify," either as part of the record in the disciplinary hearing, or later in connection with a court proceeding. *Ponte*, 471 U.S. at 497. With these limitations in mind, the Supreme Court conceded that a constitutional challenge to a refusal to call witnesses may rarely, if ever, be successful. *Ponte*, 471 U.S. at 499.

Plaintiff argues that he was not allowed to present his approved witness to ask questions directly or through the disciplinary committee, and no reason why was given as to why. (ECF No. 31 at 5:8-14.)[1] Plaintiff submits Carpenter's responses to discovery where Carpenter admits that Plaintiff wanted to call Officer Fonoimoana as a witness, and this was approved. (ECF No. 31 at 19, Carpenter response to request for admission 2.) Carpenter stated that inmates are allowed to ask questions of their witnesses if the question is relevant and allowed by the hearing officer. (ECF No. 31 at 20, Carpenter response to request for admission 3.) Plaintiff asked Carpenter to admit that he stated in the disciplinary hearing that calling the witness was not necessary as Carpenter had questioned Fonoimoana himself, and she admitted what Plaintiff claimed she would say. Carpenter responded that he spoke to Fonoimoana prior to the hearing. In addition, Carpenter asked Plaintiff if he was going to ask Fonoimoana if the tattoo was old, and Plaintiff said yes. Carpenter then stipulated that if called, that is what the witness would answer. (ECF No. 31 at 20, request for admission 4 and response.)

Defendants, on the other hand, argue that Plaintiff was allowed to call his witness at the disciplinary hearing. They provide the disciplinary hearing summary, which states that Plaintiff called Officer Fonoimoana as a witness; that she was allowed; and she told Carpenter that her opinion was that the tattoo was not fresh. (ECF No. 32-4 at 2.) Therefore, Defendants contend Plaintiff received his due process. (ECF No. 32 at 3:16-18, 7:15-16.)

While the disciplinary hearing form reflects that Plaintiff was allowed to call Officer Fonoimoana as a witness during the hearing, Carpenter's discovery responses, submitted by Plaintiff, indicate that this was not the case. Neither Defendants' response to Plaintiff's motion

---

[1] Plaintiff indicates that he asked for a copy of the transcript of the disciplinary hearing, but Defendants objected that it was oppressive (ECF No. 64 at 6:16-22); however, Plaintiff does not assert that he timely filed a motion to compel production of the disciplinary hearing transcript.

for summary judgment nor Defendants' own motion for summary judgment addresses this discrepancy. Thus, there is a genuine dispute of material fact as to whether Plaintiff was allowed to call Fonoimoana as a witness. If, as his discovery responses suggest, Carpenter did not allow Plaintiff to call the witness, Carpenter may have had a legitimate reason for doing so; however, Defendants do not raise this issue in their briefing. Therefore, the court cannot consider whether summary judgment in Carpenter's favor is appropriate on that basis.

In sum, in response to Plaintiff's motion, Defendants produce the disciplinary hearing summary which suggests that Fonoimoana was called as a witness, creating a genuine dispute of material fact sufficient to defeat Plaintiff's motion for summary judgment. Plaintiff, on the other hand, raises a genuine dispute of material fact in response to Defendants' motion for summary judgment, by pointing to Carpenter's discovery responses, which suggest that Fonoimoana was not in fact called as a witness. In light of the existence of a genuine dispute of material fact as to this issue, Plaintiff's and Defendants' motions for summary judgment should be denied insofar as Plaintiff claims that his due process rights were violated when Carpenter did not allow him to call his witness and failed to provide a reason for not allowing the witness to be called.

Defendants also argue they are entitled to qualified immunity. The qualified immunity analysis consists of two steps: (1) viewing the facts in the light most favorable to the plaintiff, did the defendant violate the plaintiff's rights; and (2) was the right clearly established at the time the defendant acted. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc), *cert. denied*, 137 S.Ct. 831 (Jan. 23, 2017) ; *see also Hines v. Youseff*, 914 F.3d 1218, 1228-29 (9th Cir. 2019).

Here, viewing the facts in the light most favorable to Plaintiff, Carpenter did not allow Plaintiff to call his witness and never provided a reason for doing so. The law was sufficiently clear that this would violate Plaintiff's due process. *See Ponte*, 471 U.S. at 497 (Prison officials should explain "in a limited manner, the reason why witnesses were not allowed to testify," either as part of the record in the disciplinary hearing, or later in connection with a court proceeding.). Therefore, Defendants are not entitled to qualified immunity at this juncture.

### 2. Some Evidence

"[T]he requirements of due process are satisfied if some evidence supports the decision by the disciplinary board." *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985); *see also Wapole v. Hill*, 472 U.S. 445, 454-55 (1984) (citations omitted).

"Ascertaining whether th[e] [some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Wapole*, 472 U.S. at 455-56 (citations omitted) (emphasis added). The Supreme Court declined to adopt a more stringent standard, reasoning that "[p]rison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." *Id*. at 456 (citation omitted). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id*.

"The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context

requires only that there be some evidence to support the findings made in the disciplinary hearing." *Id*. at 457.

The court is "not to make its own assessment of the credibility of witnesses or reweigh the evidence." *Cato v. Rushen,* 824 F.2d 703, 705 (9th Cir. 1987) (citing *Wapole*, 472 U.S. at 455.) "Nonetheless, there must be some indicia of reliability of the information that forms the basis for prison disciplinary actions." *Id*. (citing *Mendoza v. Miller*, 779 F.2d 1287, 1295 (7th Cir. 1985); *Kyle v. Hanberry*, 677 F.2d 1386, 1390-91 (11th Cir. 1982)).

Defendants state that when the inmate alleges that the prison guard's allegation is false, the "some evidence" standard does not apply, and instead, there must be evidence besides the guard's allegation on which the disciplinary board must rely, citing *Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997). They contend that Carpenter properly relied not only on Gouveia's report, but also on the photographs and medical report to support his decision.

The court's screening order also made a general reference to *Hines* (ECF No. 3 at 5:17-19)*;* however, upon further review, *Hines* is distinguishable from this case and does not apply.

In *Hines,* the inmate brought a 1983 action alleging that a correctional officer falsely charged him with a rule violation in retaliation for his use of the grievance system. *Hines,* 108 F.3d at 267.  The jury found in favor of the inmate. *Id.* The correctional officer appealed, arguing, among other things, that the district court should have applied the deferential "some evidence" standard in reviewing the correctional official's accusation that the inmate violated the rule. *Id.* at 268. The Ninth Circuit addressed "whether the deferential ['some evidence'] standard of review should apply not only to a prison disciplinary board's finding of a rule violation, but also to a prison guard's initial accusation of a rule violation where the guard's accusation itself allegedly is false and retaliatory." *Id*. The court held that it should not because "there are no

procedural safeguards protecting a prisoner from false retaliatory accusations; a guard may, and often does, file an accusation solely on his own word, making his mere accusation the only 'modicum of evidence.'" *Id*. at 268-69.

*Hines* held that "where a prisoner alleges a correctional officer has falsely accused him of violating a prison rule *in retaliation for the prisoner's exercise of his constitutional rights*, the correctional officer's accusation is not entitled to the 'some evidence' standard of review that we afford disciplinary administrative decisions." *Hines*, 108 F.3d at 269 (emphasis added)

The Ninth Circuit confirmed in *Bruce v. Ylst*, "the 'some evidence' standard applies only to due process claims attacking the result of a disciplinary board's proceeding, not the correctional officer's retaliatory accusation." *Bruce v. Ylst,* 351 F.3d 1283, 1289 (9th Cir. 2003) (citation omitted).

Here, Plaintiff asserts that Gouveia's notice of charges, which led to his disciplinary conviction, was false, but his complaint does not allege that the false charge was made by Gouveia in retaliation for exercising his constitutional rights, as was the case in *Hines*. (*See* Pl.'s Compl., ECF No. 4 at 4.) He attempts to argue in his motion for summary judgment that Gouveia's actions were retaliatory (ECF No. 31 at 10-11); however, he did not include allegations of retaliation in his complaint. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ( "A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations.").

Therefore, the "some evidence" standard applies. *See e.g. Church v. Naftzger,* 1:17-cv-00596-AWI-JLT (PC), 2019 WL 5784903, at *6 (E.D. Cal. Nov. 6, 2019), report and recommendation adopted at 2020 WL 5569716 (E.D. Cal. Sept. 17, 2020) (finding that "some evidence" standard applied where the inmate had not alleged a false and retaliatory accusation);

13

1  *Haynes v. Rosario,* 2:12-cv-3018 KJN P, 2015 WL 1498891, at *13 (E.D. Cal. Mar. 31, 2015)
2  (finding "some evidence" standard applied where inmate did not allege a retaliation claim but
3  contended his due process rights were violated in connection with a prison disciplinary hearing);
4  *Lister v. Ochoa*, No. CV 11-4511-VAP (PJW), 2012 WL 1144596, at *3-4 (C.D. Cal. Mar. 7,
5  2012), report and recommendation adopted by 2012 WL 114589 (C.D. Cal. Apr. 3, 2012); *Klein*
6  *v. Helling,* 3:05-cv-00390-PMP-VPC, 2007 WL 556941, at 810 (D. Nev. Feb. 12, 2007) ("some
7  evidence" standard did not apply where inmate alleged retaliation claim and not due process
8  claim regarding disciplinary decision); *Jones v. Lopez*, No. 3:00-cv-0509-ECR-VPC, 2007 WL
9  951658, at *14 (D. Nev. Mar. 26, 2007) ("some evidence" standard did not apply because no due
10 process violation was alleged, and there was only a retaliation claim).
11      In any event, under the "some evidence" standard of under *Hines*, the record
12 demonstrates that Plaintiff's procedural due process rights were not violated in this regard.
13      Carpenter relied on Gouveia's report, which asserted that Plaintiff told Gouveia that he
14 had the tattoo for a few months and received it in the unit. In addition, Carpenter had the
15 photographs of the tattoo that were attached to the report. Finally, Carpenter said that he relied
16 on the medical record that attributes a statement to Plaintiff that the tattoo was not documented
17 (presumably referring to the tattoo not being documented in Plaintiff's file on intake to NDOC).
18 While "not documented," might not have necessarily meant that the tattoo was new since he was
19 confined in prison (i.e., perhaps the prison officials missed documenting it on intake), it was
20 reasonable for Carpenter to interpret a tattoo that was "not documented" was received after
21 intake into this prison. In other words, if Carpenter knew that prison officials documented tattoos
22 of inmates on intake into the prison, and a tattoo was not documented, he could come to the
23 conclusion that the inmate got the tattoo after he was incarcerated. The court is not permitted to

14

evaluate what other conclusions Carpenter might have reached. Therefore, Carpenter's disciplinary determination was supported by not only Gouveia's report, but also the medical record.

Accordingly, the court finds that Plaintiff's procedural due process rights were not violated in this regard.

**3. False Charge**

Courts have held that prisoners do not have a constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty or property interest. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951-52 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988) (allegation that false evidence was planted by a prison guard does not state a constitutional claim where procedural protections are provided). Rather, the Fourteenth Amendment provides that a prisoner has a right not to be deprived of a protected interest without due process of law, and to be free from retaliatory charges. *Hines,* 108 F.3d 265, 269 (9th Cir. 1997); *Sprouse*, 870 F.2d at 452. Thus, as long as a prisoner receives proper procedural due process, a claim based on the falsity of disciplinary charges, standing alone, does not state a constitutional claim. *Id*.; *see also Freeman*, 808 F.2d at 951; *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984).

Here, Plaintiff has not alleged a retaliation claim against Gouveia. Insofar as Plaintiff claims that the disciplinary decision was not supported by some evidence, the court has found to the contrary. The court has recommended that Plaintiff only proceed with his due process claim insofar as he alleges that his due process rights were violated when his requested witness was not called. There is no allegation that Gouveia had any involvement in the failure to call the witness. Plaintiff does alleges that he raised the due process issues in his disciplinary appeal, which Baker

and Wickham denied. Therefore, summary judgment should be granted with respect to Gouveia, and the due process claims related to the failure to call his witness should proceed against Carpenter, Baker and Wickham.

Plaintiff spends a great deal of time arguing that Gouveia falsely said at the hearing that he did not know Plaintiff prior to the tattoo incident, because Gouveia had in fact issued him a prior notice of charges. This fact is extraneous to the issues proceeding here: whether Plaintiff should have been allowed to call a witness, and whether the disciplinary finding was supported by some evidence. While this might have had some bearing at a trial where the jury is tasked with assessing credibility, the court is not permitted to make credibility determinations in resolving motions for summary judgment.

Plaintiff also references his substantive due process rights in his motion for summary judgment; however, he was not allowed to proceed with a substantive due process claim; therefore, the court will not address these arguments.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **GRANTING** Defendants' motion for summary judgment (ECF No. 40) and **DENYING** Plaintiff's motion for summary judgment (ECF No. 31) insofar as Plaintiff alleges his due process rights were violated because the disciplinary decision was not based on some evidence; and

(2) **GRANTING** Defendants' motion for summary judgment (ECF No. 40) as to Gouveia insofar as Plaintiff claims his due process rights were violated because he was not allowed to call his witness, but **DENYING** Defendants' motion for summary judgment (ECF No. 40) on this aspect

of his claim as to defendants Carpenter, Baker and Wickham; and **DENYING** Plaintiff's motion for summary judgment (ECF No. 31) as to this aspect of his due process claim.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: December 18, 2020

_William G. Cobb_
William G. Cobb
United States Magistrate Judge